[Civ. No. 8051.   Third Dist.   Aug. 21, 1952.]

GRASSLANDS WATER ASSOCIATION, INC. (a Corporation), Appellant, v. LUCKY LEVEN LAND AND CATTLE COMPANY (a Corporation), Respondent.

Claude L. Rowe for Appellant.

Treadwell & Kane for Respondent.

VAN DYKE, J.—Appellant, as plaintiff in the trial court, brought this action to recover from the respondent the sum of $884. The complaint alleged that respondent was indebted to appellant on account of an assessment against the respondent as a stockholder of the appellant corporation, made pursuant to the appellant's by-laws.

It appears that appellant is a nonprofit corporation organized in 1944 principally for the purpose of supplying water to its members who are owners of lands served by appellant. Its by-laws describe the exterior boundaries of the lands which may be served by it and provide that the cost of such service shall be borne by all the stockholders in the proportion that the number of shares of stock owned by each bears to the total outstanding stock of the corporation. The by-laws provide for the levying of assessments as one of the permitted means whereby the necessary funds to pay for the service rendered by the corporation may be raised. Acting under this authority, the corporation in February and July of 1949 levied assessments of $1.00 per acre upon the lands of its stockholders, including respondent. Respondent refused to pay and this action followed.

Basically, respondent's defense was that it was not a stockholder so as to be liable for the assessments purportedly levied against it. Admittedly, respondent was a stockholder through 1948, but it claims to have withdrawn from the corporation by substantial compliance with the conditions for such withdrawal provided by the by-laws; that any defect in its compliance was waived by appellant and that appellant by its conduct was estopped to claim that respondent had not effectively withdrawn so as to be beyond the reach of assessment. Upon the subject of withdrawal the by-laws provided that all stockholders might cease to become such by surrendering their stock, properly endorsed, to the secretary of the corporation and notifying the corporation in writing at least 30 days before December 31st of any calendar year, of their desire to forfeit their membership in the corporation. There were other conditions, but no claim is made by either party to this action that they were not met. The trial court found in accordance with the contentions of

respondent, and from the judgment in its favor this appeal was taken.

It is not claimed by respondent that it either notified appellant in writing of its withdrawal or surrendered its stock to appellant's secretary, until some time during January of 1949, and it therefore of necessity admits that it did not literally comply with the provisions of the by-laws regarding withdrawal. It relies upon the following facts to sustain the judgment rendered in its favor. During 1949 respondent drilled a well upon its lands from which it planned to furnish water to its own acreage, and upon the completion and testing of the well intended to withdraw from appellant corporation. Its president testified that about November 28th he began attempting to get in touch with the general manager of appellant, who was also its secretary and treasurer, concerning respondent's withdrawal. He was unable to reach him but on December 1st he again called the office of appellant on the telephone and was answered by an employee of appellant, its engineer. Respondent's president told this man that his corporation had drilled its well and wanted to surrender its stock and asked that he be told how to go about it. This question was not answered. On the contrary, the engineer replied "You are all paid up for '48, why don't you wait until January of '49, after the Directors' meeting, and . . . maybe you can make it so that you can still hang onto your stock." Respondent's president, aware that respondent had paid a sum of money per share for the stock when originally purchased, testified that he thereupon waited until the 10th of January. He then learned from a newspaper that although the meeting had been held it had adjourned without any action because a quorum was not present. He thereupon sent in the certificate of stock endorsed in blank with a note to the engineer with whom he had talked, saying "as per our telephone conversation, I am herewith enclosing the Lucky Leven Land and Cattle Company stock for cancellation." On February 25th following the stock was returned by appellant, the letter of transmittal drawing the respondent's attention to the provisions of the by-laws governing withdrawal. In the meantime, on February 15th, the appellant's board of directors declared the first assessment of $1.00 per acre against the respondent and from that time on the appellant has asserted and respondent has denied the respondent's continued liability through 1949 for its share of the cost of operation of appellant, measured by the two assessments.

We can find no support in the foregoing for the judgment rendered. No claim is made, nor could it be made upon this record, that the provisions of the by-laws governing withdrawal of members were in any way unreasonable or unjust. Respondent had given its written consent thereto. It appears that a reasonable regard for the proper administration of the affairs of appellant rendered the particular by-law appropriate. The secretary-manager of appellant testified, and it is nowhere denied, that knowledge of the amount of acreage to be served was needed by appellant well in advance of the time when service was to be made in order that it might make definite and necessary arrangements for the delivery of the required quantity of water, which water is generally purchased under contract from the Federal Bureau of Reclamation. The judgment in favor of respondent then must rest upon an affirmative showing that by reason of the single conversation held between respondent's president and appellant's employee the plain provisions of the by-laws governing withdrawal were waived, or that in some manner what was said by the employee to respondent's president at that time estops appellant from contending that by its failure to comply with the by-laws respondent remained a member through 1949, so far as liability for appellant's corporate expenses for that period are concerned.

We think it unnecessary to determine how or in what manner or by what authority the pertinent by-laws of appellant in this case might be waived, for certainly it must be said that it could not be waived by any agent of appellant unless that agent had actual or ostensible authority to speak and act for the corporation upon the subject of withdrawal by respondent. "Whatever the title by which he is designated, within the scope of his authority an agent's acts or statements are in legal effect equivalent to those of the principal, but beyond it they have no operation as against the principal save as a basis for ratification or estoppel." (2 C.J.S., "Agency," p. 1182.) "The agent's authority comprises all powers, whether express, implied, or ostensible, with which he is vested by the principal, but no more, since in the last analysis it rests upon the principal's consent." (Id. p. 1184.)

There is nothing in the title of "Engineer" nor in the testimony found in this record from which there can be drawn any inference that the appellant's engineer actually possessed any authority whatever to treat for the corporation in the

matter of withdrawal of its members; nor is there anything in this record from which it can be inferred that by the course of appellant's dealings with respondent any such authority had been ostensibly conferred. The mere fact that, when respondent's president attempted to contact the appellant's general manager and secretary by calling appellant's office on the telephone, the call was answered by the engineer, no more warrants an inference that bcause the engineer was there and answered the telephone he was thereby in some way held out as capable of dealing with respondent in respect of its inquiry than would be the case had the telephone been answered by a typist employed by appellant or a janitor likewise employed who happened to be in the office cleaning the floors. ■ What we have said concerning waiver applies equally to the claim of estoppel, for estoppel arises when one party to a transaction intentionally leads another to believe in a particular thing as being true under such circumstances as to make it inequitable thereafter for such party to defeat a justifiable reliance upon the thing believed to be true. ■ Nothing of the sort is made to appear in this record for, as we have said, all that occurred between respondent's president and appellant's engineer was upon a subject matter which respondent's president must have known was entirely without the authority of the engineer.

The result is that the trial court's findings as to waiver and estoppel are without support in the evidence; and the judgment appealed from must be by reason thereof, and it is hereby, reversed.

Adams, P. J., and Schottky, J. pro. tem., concurred.